IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BRANDON LEWIS and FRANKIE TIBORSKY,

                    Plaintiffs,

v.                          //   CIVIL ACTION NO. 1:11CV192
                                     (Judge Keeley)

CITY OF CLARKSBURG, JOSHUA COX,
ROBERT HILLIARD and ERIKA SOUTHERN,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the motion of the defendants seeking dismissal of the plaintiffs' claims for relief pursuant to 42 U.S.C. § 1983, as well as their pendent state law claims. (Dkt. No. 24). For the reasons that follow, the Court **CONVERTS** the defendants' motion to dismiss to one for summary judgment, **GRANTS** the motion as to Counts I, II, VI, and VII (insofar as Counts VI and VII allege a federal cause of action for spoliation of evidence), and **DISMISSES WITHOUT PREJUDICE** the plaintiffs' remaining state law claims.

## I. PROCEDURAL HISTORY

Pursuant to 42 U.S.C. § 1983, the plaintiffs, Brandon Lewis ("Lewis") and Frankie Tiborsky ("Tiborsky"), sued the City of Clarksburg ("Clarksburg"), Clarksburg Police Detectives Robert Hilliard and Joshua Cox ("Hilliard" and "Cox"), and Erika Southern ("Southern") in this Court in December 2011. They complain that,

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                    1:11CV192

<u>MEMORANDUM OPINION AND ORDER</u>

throughout an investigation of Southern's allegations of second degree sexual assault, Hilliard and Cox, the investigating officers, conspired to violate Lewis and Tiborsky's constitutional rights. In addition to their § 1983 claims, Lewis and Tiborsky allege several state tort claims against the defendants, including malicious prosecution, spoliation of evidence, and intentional infliction of emotional distress.

On June 27, 2012, the defendants sought dismissal of the plaintiffs' § 1983 claims, arguing that Lewis and Tiborsky cannot establish that their underlying convictions terminated in their favor. Their motion questions whether Lewis and Tiborsky can satisfy the favorable termination requirement of <u>Heck v. Humphrey</u>, 512 U.S. 477, 479 (1994), when neither was incarcerated post-conviction due to his strategic choice to plead guilty to a lesser included offense, but both had the opportunity to challenge the constitutional claims raised here during the state proceeding.

After reviewing the parties' arguments and the record of the underlying state court criminal case, the Court concludes that Lewis and Tiborksy are unable to meet <u>Heck</u>'s favorable termination requirement, and their § 1983 claims are thus barred.

2

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                1:11CV192

MEMORANDUM OPINION AND ORDER

## II. FACTUAL BACKGROUND

On the evening of December 14, 2009, Lewis and Tiborsky were socializing at a friend's apartment in Clarksburg, West Virginia, when Southern, another resident in the apartment building, joined them. (Dkt. No. 3 at 3). At some point, the three decided to check their MySpace pages and made the short trip via the building's elevator to Southern's apartment, where, Southern alleges, Lewis and Tiborksky raped her. (Dkt. No. 36-1 at 4). The plaintiffs contend the alleged rape was preceded by an evening of consensual sex between Tiborsky and Southern, part of which took place in the apartment building's elevator and hallways and would have been recorded on the building's closed circuit camera system. (Dkt. No. 36 at 10 n.6).

Following the incident, Southern reported the alleged rape to the Clarksburg Police Department, and Cox and Hilliard interviewed her. (Dkt. No. 36-1 at 4). Hilliard was not on shift that evening, nor even on call, but he is Southern's brother and allegedly learned of her reported rape from a source within the police department. (Dkt. No. 3 at 3). A third Clarksburg police officer identified Lewis based on photographs in Southern's camera (dkt. no. 36-1 at 4), and Southern later confirmed the identification through a photo line-up. Id. at 6. The police report is unclear as

3

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                    1:11CV192

MEMORANDUM OPINION AND ORDER

to how Tiborsky was identified as Southern's second assailant. Nonetheless, the next morning, at 5:34 A.M., acting pursuant to an arrest warrant issued by a state magistrate, the Clarksburg Police Department SWAT team arrested Lewis and Tiborsky on suspicion of second degree sexual assault of Southern. (Dkt. No. 36-1 at 16, 17; Dkt. No. 38-4 at 2,3).

Later that morning, Hilliard traveled to Southern's apartment building to collect the closed circuit camera system's footage from the night before. (Dkt. No. 36 at 10-11). The parties dispute whether Hilliard volunteered for this duty or Cox directed him to go. Id. In any case, Hilliard claims that he simply told a building employee he needed the video pertaining to certain time periods relevant to Southern's allegations. According to the building employee, however, Hilliard told him to look for specific things on the tapes. (Dkt. No. 36-4 at 7).

Notably, although the building employee remembered reviewing elevator footage and transferring that footage to the DVR he gave to Hilliard (dkt. no. 36-4 at 8), the DVR Hilliard ultimately delivered to Cox later in the day on December 15 contained no footage from the building's elevators. (Dkt. No. 36 at 11; Dkt. No. 36-6 at 26). Nine days after Southern reported the rape, Hilliard delivered a second DVR from the apartment building's system to Cox.

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.               1:11CV192

MEMORANDUM OPINION AND ORDER

(Dkt. No. 36 at 12; Dkt. No. 36-6 at 26). Although this DVR
contained footage from the building's elevators, Lewis and Tiborsky
contend that it did not depict all of their trips with Southern on
the night of December 14. (Dkt. No. 36 at 12 n. 10).

Cox later went to the apartment building to retrieve the rest
of the video footage from the elevator, but it was no longer
available. (Dkt. No. 36-4 at 69, 70). Lewis and Tiborsky allege
that the missing footage was exculpatory, and that Hilliard caused
it to disappear. (Dkt. No. 3 at 6, 7). They further allege that the
elevator footage was not the only exculpatory evidence Hilliard
excluded from the investigation, claiming he was aware that, in
2006, his sister had falsely accused her then-husband of rape, id.
at 7, and that Cox, as the investigating officer and Hilliard's
subordinate, knew or should have known about that history. Id.

During the September 2010 term of the Harrison County Grand
Jury, Joseph Shaffer ("Shaffer"), the Harrison County Prosecuting
Attorney, sought to indict Lewis and Tiborsky on charges of second
degree sexual assault and conspiracy to commit sexual assault.
(Dkt. No. 24-2; Dkt. No. 38-4 at 6,7). Cox testified before the
grand jury about his investigation and its outcome (dkt. no. 38-5
at 3), but failed to disclose that key video footage from the
elevator was missing and that Southern had previously made false

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                    1:11CV192

MEMORANDUM OPINION AND ORDER

allegations of rape. The grand jury also never learned that
Hilliard, her brother, had investigated Southern's rape claim. Id.
Besides these deliberate omissions, Lewis and Tiborsky also allege
that Cox's grand jury testimony was substantively false. (Dkt. No.
3 at 8). Despite this, the grand jury returned true bills, and
Lewis and Tiborsky were indicted for second degree sexual assault
and conspiracy to commit sexual assault.

Prior to trial, Lewis and Tiborsky sought to dismiss the
indictments on the ground that Cox and Hilliard had failed to
collect or preserve the allegedly exculpatory video footage from
the elevator in Southern's apartment building. (Dkt. No. 47 at 3).
At a hearing on the motion, their attorneys questioned Cox and
Hilliard about Hilliard's role in the investigation, as well as his
alleged intentional destruction of exculpatory video footage.
Although Lewis and Tiborsky maintain that Cox and Hilliard
testified falsely at that hearing, the circuit court denied their
motion to dismiss the indictments. It also denied Tiborsky's motion
to suppress certain statements from the morning of his arrest, made

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                1:11CV192

<u>MEMORANDUM OPINION AND ORDER</u>

while he was in custody and allegedly intoxicated. (Dkt. No. 47 at 51).[1]

During Lewis and Tiborsky's trial, which began on December 1, 2010, Cox testified that, during his interrogation, Lewis had invoked his right to remain silent. (Dkt. No. 45-2 at 149). The trial judge halted the trial as a result of this blunder and offered the defendants a mistrial. <u>Id.</u> at 150. Lewis and Tiborsky contend Cox's testimony was part of a wide-reaching scheme involving Cox, Hilliard and the State intended to provoke a mistrial because the case was going badly for the prosecution. (Dkt. No. 3 at 9-10).[2]

At the point when the trial court offered them a mistrial, Lewis and Tiborksy faced two options - either continue the trial with a limiting instruction aimed at correcting Cox's improper statement, or agree to the mistrial and begin the case anew. At that point, the prosecutor proffered a third option, guilty pleas to the lesser included offense of misdemeanor battery. (Dkt. No. 45-2 at 157; Dkt. No. 45-4; Dkt. No. 45-6). Lewis and Tiborsky

---

[1]    The plaintiffs did successfully admit evidence of Southern's earlier alleged false allegation of rape into evidence. (Dkt. No. 3 at 8-9).

[2]    In fact, Tiborsky's brother, Maxwell, told Tiborsky that, before he took the stand, Cox had stated "they were going to mistrial it." (Dkt. No. 37-3 at 18.)

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                1:11CV192

<u>MEMORANDUM OPINION AND ORDER</u>

accepted this offer against their attorneys' advice, pled guilty to misdemeanor battery (dkt. no. 45-2 at 157, 182), and were released from custody the same day.

Before accepting their guilty pleas, the trial judge thoroughly reviewed the terms of their written plea agreements and advised Lewis and Tiborsky as follows:

> [I]f the Court accepts these pleas from both of you, anything that's occurred up to this point, where you or your attorneys feel that the Court was in error or there were mistakes made that would entitle you to appeal to the Supreme Court of Appeals, <u>by entering these pleas you're giving those up – any appeal rights you have as to matters which occurred up to this point</u>. . . . And if the Court accepts your guilty pleas, there will be no trial – further trial to determine your guilt or innocence. You'll be guilty of these offenses – this offense of battery, both of you, based upon your guilty pleas.

(Dkt. No. 45-2 at 174; <u>see also</u> Dkt. No. 45-2 at 171) (emphasis added). Both affirmed that they understood and agreed with their appellate waivers, and had reviewed them with their attorneys prior to entering their guilty pleas. <u>Id.</u>[3]

When the trial court inquired why they were guilty of the crime of misdemeanor battery, Tiborsky replied: "I touched her when

---

[3]     Lewis and Tiborsky's written plea agreements do not contain an appellate waiver. The trial court, however, read the waiver into the record, and specifically questioned each man as to his understanding of his appellate rights. Moreover, neither Lewis nor Tiborksy ever challenged the conviction or the voluntary nature of the pleas.

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                    1:11CV192

MEMORANDUM OPINION AND ORDER

she said no, and I feel that was wrong . . . ." Id. at 179. Lewis
in turn responded: "My contact was inappropriate." Id. Following
those allocutions, the court accepted their guilty pleas and
sentenced them to time served. Id. at 186, 187. When released, each
had served less than the statutory maximum sentence of one year for
misdemeanor battery.[4] (Dkt. No. 36-5 at 30).

Neither Lewis nor Tiborsky ever filed an appeal attacking his
guilty plea as involuntary. Nor did either attempt to collaterally
attack his conviction or challenge the manner in which the case had
been prosecuted through a habeas petition filed in state or federal
court. Now, however, pursuant to § 1983, each seeks redress for
constitutional violations allegedly committed by Cox, Hilliard and
Clarksburg during the course of the investigation and prosecution
of Southern's alleged sexual assault.

**III. LEGAL STANDARD**

To survive a motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(6), a complaint must contain factual allegations sufficient
to state a plausible claim for relief. Ashcroft v. Iqbal, 129 S.

---

[4] Tiborsky, who had been unable to post bond, had been incarcerated
from December 14, 2009 until December 3, 2010. Lewis had been able to
post bond at some point, but had been incarcerated intermittently from
December 15, 2009 to January 27, 2010, and, later, from August 13, 2010
until December 3, 2010.

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                    1:11CV192

MEMORANDUM OPINION AND ORDER

Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). The Court may consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, and to the motion to dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Fed. R. Evid. 201. Philips v. Pitt Co. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)). However, "[i]f matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Pro. 12(d). Pursuant to Fed. R. Civ. Pro. Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Although no exhibits accompanied the complaint, the defendants did attach two documents to their motion to dismiss - an affidavit by Shaffer and an order entered by the trial court following the defendants' guilty pleas and sentencing hearing. Arguably, the post-plea order is a document which this Court may judicially notice pursuant to Fed. R. Evid. 201. Shaffer's affidavit, however, is not subject to judicial notice under Rule 201, nor is it

10

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                1:11CV192

MEMORANDUM OPINION AND ORDER

integral to the complaint as it contradicts the plaintiffs'
allegations. Because the affidavit is a document outside the
pleadings, its consideration converts the defendants' motion to
dismiss to one for summary judgment pursuant to Federal Rule of
Civil Procedure 56.

Conversion of the defendants' motion to dismiss is proper
because "all parties [were] given a reasonable opportunity to
present all the material that is pertinent to the motion." Fed. R.
Civ. Pro. 12(d). The defendants also attached another exhibit to
their reply brief, and the plaintiffs attached twenty exhibits to
their response. Then, following oral argument, at the Court's
invitation, the plaintiffs supplemented the record with numerous
exhibits, and the defendants were encouraged to do the same if they
wished.

Because the parties have had a reasonable opportunity to
present pertinent material, neither side is prejudiced by the
conversion of the motion. Additionally, inasmuch as the Court
concludes that the plaintiffs' § 1983 claims are barred as a matter
of law, the characterization of the defendants' motion ultimately
is irrelevant.

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                1:11CV192

MEMORANDUM OPINION AND ORDER

## IV. DISCUSSION OF LAW

### A. Counts I and II - Section 1983 Constitutional Claims

In Count I of their complaint, Lewis and Tiborsky allege that Cox, Hilliard and Clarksburg deprived them of their rights under the Fourth, Fifth, and Sixth Amendments of the Constitution of the United States, and also violated various provisions of West Virginia's constitution and statutes. In order to prevail on such claims, they must demonstrate both that they were deprived of a right secured by the Constitution or federal law, and also that the deprivation occurred under color of state law. 42 U.S.C. § 1983; Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (citing American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 49-50 (1999)).

Additionally, under Heck v. Humphrey, 512 U.S. 477, 479 (1994), whenever a § 1983 plaintiff seeks to

> recover damages for allegedly unconstitutional conviction or imprisonment, or other harm caused by actions whose unlawfulness would render a conviction of sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . ., or called into question by a federal court's issuance of a writ of habeas corpus.

Id. at 486-487.

Thus, a court faced with claims such as those here must undertake a two-step analysis. Id. at 487. First, it must determine

12

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                1:11CV192

MEMORANDUM OPINION AND ORDER
─────────────────────────────────────────────────────────────

exactly what is being challenged. If the challenge is to the unconstitutionality of a plaintiff's "conviction or imprisonment, or other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," the court must dismiss the complaint "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id.

**1.**

While Lewis and Tiborsky have been careful not to mount a frontal attack to their convictions or sentences, they do allege "other harms" suffered as a result of the investigation and prosecution of Southern's claims of sexual assault. The Court therefore must determine whether "a judgment in favor of the plaintiff[s as to those claims] would necessarily imply the invalidity of [their] conviction[s] or sentence[s]." Heck, 512 U.S. at 487; Thigpen v. McDonnell, 273 F. App'x 271, 272 (4th Cir. 2008).

Lewis and Tiborsky allege that the defendants' conduct harmed them and violated their constitutional rights in five distinct ways (dkt. no. 3 at 12):

1) Withholding exculpatory evidence in violation of their Fourth Amendment rights (dkt. no. 36 at 7);

2) Arresting and prosecuting them without probable cause, in violation of their Fourth Amendment rights, id. at 13;

13

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                    1:11CV192

MEMORANDUM OPINION AND ORDER

3)   Interrogating Tiborsky while he was intoxicated, in violation
     of his Fifth Amendment rights;

4)   Testifying at trial that Lewis had exercised his right to
     remain silent, in violation of his Fifth Amendment rights, id.
     at 17; and,

5)   Preventing them from presenting exculpatory evidence to
     counter Southern's report of rape, conspiring to cause a
     mistrial, and then seeking to cover up their conspiracy, all
     in violation of their Sixth Amendment rights. Id. at 19.

     Turning first to Lewis and Tiborsky's allegations that the
defendants violated their rights under the Fourth Amendment,
success on those claims would necessarily imply the invalidity of
their convictions. In Heck, allegations that the respondents "had
engaged in an unlawful, unreasonable, and arbitrary investigation
leading to [Heck's] arrest [and] knowingly destroyed evidence which
was exculpatory in nature and could have proved [his] innocence,"
512 U.S. at 479, necessarily "challenged the legality of the
conviction." Id. at 490. As Lewis and Tiborsky raise nearly
identical claims here, success on such claims would necessarily
imply the invalidity of their convictions as well. See also
Gatreaux v. Sanders, 395 F. App'x 311, 312 (8th Cir. 2010) (per
curiam) (petitioner's claim that he was arrested on a false warrant
was barred by Heck because it necessarily implied the invalidity of
his conviction); Buckenburger v. Reed, 342 F. App'x 58, 62 (5th
Cir. 2009); Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996)

14

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.              1:11CV192

MEMORANDUM OPINION AND ORDER

(per curiam) (holding that <u>Heck</u> unquestionably barred the plaintiff's claim that the defendants lacked probable cause to arrest him).

Success on Lewis and Tiborsky Sixth Amendment claims also would necessarily imply the invalidity of their convictions. Any judgment that the defendants prevented them from presenting exculpatory evidence at trial would necessarily imply the invalidity of the investigation and judicial proceedings that resulted in their guilty pleas. <u>Snyder v. City of Alexandria</u>, 870 F.Supp. 672, 685 (E.D. Va. 1994) (allegations that "police withheld exculpatory evidence" necessarily implied the invalidity of petitioner's conviction). Such is also the case regarding their claim that the defendants conspired to have Cox "throw" the trial by testifying that Lewis had requested counsel and exercised his right to remain silent. <u>Abella v. Rubino</u>, 63 F.3d 1063, 1065 (11th Cir. 1995) (success on plaintiff's claim that "the defendants unconstitutionally conspired to convict him of crimes he did not commit" would necessarily imply invalidity of conviction).

Finally, because Lewis and Tiborsky's Fifth Amendment claims fail as a matter of law, whether those claims would necessarily imply the invalidity of their convictions is irrelevant. Turning first to Tiborsky's claim that he was interrogated while

15

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.            1:11CV192

MEMORANDUM OPINION AND ORDER

intoxicated, he has never claimed, nor does the record reflect, that his alleged involuntary statement was ever introduced at trial. Thus, there is no evidence that his Fifth Amendment right to freedom from self-incrimination was actually violated. See U.S. v. Breeden, 149 F. App'x 197, 202 (4th Cir. 2002) ("'[s]tatements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs.'" (quoting Chavez v. Matinez, 538 U.S. 760, 767 (2003)). Similarly, Lewis' claim that his Fifth Amendment right to freedom from self-incrimination was violated when Cox testified that Lewis had invoked his right to remain silent also fails because Cox's trial testimony is absolutely privileged and cannot give rise to a § 1983 claim. Lyles v. Sparks, 79 F.3d 372, 378 (4th Cir. 1996) ("government officials who testify at criminal trials are absolutely immune from damages liability based on their testimony") (citing Brisco v. LaHue, 460 U.S. 325, 326 (1983)).

In sum, Lewis and Tiborsky's Fifth Amendment claims fail as a matter of law. Their Fourth and Sixth Amendment claims, however, require further analysis under Heck's favorable termination requirement, and the Court turns next to that heartland issue.

16

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                    1:11CV192

MEMORANDUM OPINION AND ORDER

2.

The plaintiffs maintain that their guilty pleas satisfy Heck's favorable termination requirement because they were their "best option for immediate release from incarceration and relief from the overwhelming burden of defending sexual assault and conspiracy charges and the potential sentences attached thereto." (Dkt. No. 3 at 11). Whether Lewis and Tiborsky may have benefitted from their guilty pleas is not the proper inquiry, however. Under Heck, a plaintiff may demonstrate the invalidity of his conviction or sentence by proving that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-487.

After the trial court accepted their guilty pleas to misdemeanor battery and released them (dkt. no. 45-2 at 186, 187), neither Lewis nor Tiborsky directly appealed his conviction, sought expungement by executive order, or a declaration by an authorized state tribunal that his conviction was invalid. Nor did they pursue habeas relief in state or federal court, although they could have done so even before entering their guilty pleas. (Oct. 31, 2012

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                    1:11CV192

MEMORANDUM OPINION AND ORDER

hearing). In sum, Lewis and Tiborsky's convictions still stand and
have not been favorably terminated as <u>Heck</u> requires.

### 3.

Relying on <u>Wilson v. Johnson</u>, 535 F.3d 262 (4th Cir. 2008),
Lewis and Tiborsky contend they are exempt from <u>Heck</u>'s favorable
termination requirement because, having been released from custody
immediately upon entering their guilty pleas, they had no practical
means to pursue habeas relief to invalidate their convictions. In
<u>Wilson</u>, the plaintiff sought damages from the State of Virginia for
arbitrarily delaying his release from prison. The district court
dismissed the case <u>sua sponte</u>, finding Wilson did not meet <u>Heck</u>'s
favorable termination requirement because his conviction still
stood and he had not obtained habeas relief from a federal court.
On appeal, the Fourth Circuit reversed, reasoning that <u>Heck</u>'s
favorable termination requirement did not bar a § 1983 claim where
the plaintiff could not practicably have sought habeas relief. <u>Id.</u>
at 268. In Wilson's case, habeas relief was impractical because,
prior to his release from custody, he had a mere four-month window
in which to challenge his arbitrarily prolonged detention.

Nonetheless, even under <u>Wilson</u>, not every § 1983 plaintiff who
fails to obtain habeas relief prior to his release from custody is
exempt from <u>Heck</u>'s favorable termination requirement. In <u>Bishop v.</u>

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                    1:11CV192

MEMORANDUM OPINION AND ORDER
_____

County of Macon, 484 F. App'x 753 (4th Cir. 2012), the plaintiff
sought damages for an alleged illegal search and seizure after
serving a thirty-six month sentence of probation, during which he
did not pursue habeas relief. A panel of the Fourth Circuit
emphasized that Wilson's exception to Heck's requirement of
favorable termination applies only where habeas relief is
unavailable due to circumstances beyond a petitioner's control:

> Unlike the plaintiff in Wilson, who had a window of only
> four months to meet the favorable termination requirement
> (which he pursued until his release), John pleaded guilty
> and was sentenced to thirty-six months' probation. He did
> not pursue habeas relief during that thirty-six-month
> period. He has made no claim that habeas relief was
> unavailable during that time, practically or otherwise.

Id. at 754. The panel also cautioned that "Wilson does not permit
a plaintiff to end-run Heck by simply sitting on his rights until
all avenues for challenging a conviction have closed." Id.[5]

Other circuit courts have recognized that only § 1983
plaintiffs who had no practical means to pursue habeas relief prior
to their release from custody are exempt from Heck's favorable

_____

[5]        In Campbell v. Beckley City Police Dept., 390 F. App'x 246,
247 (4th Cir. 2010), the Fourth Circuit applied Wilson to permit a § 1983
claim after the plaintiff had completed his sentence but had not yet
secured a favorable termination of his conviction. There, the plaintiff
challenged only a sentence enhancement, and not his conviction or
sentence or other actions that would necessarily imply the invalidity of
his conviction. Thus, Campbell is distinguishable from both Wilson,
Bishop, and the facts of the case at bar.

19

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                1:11CV192

MEMORANDUM OPINION AND ORDER

termination requirement. In Cohen v. Longshore, 621 F.3d 1311, 1316-17 (10th Cir. 2010), for example, the Tenth Circuit limited such an exception to those cases in which a petitioner's inability to obtain habeas relief is not due to his own lack of diligence. Similarly, in Guerrero v. Gates, 442 F.3d 697, 705 (9th Cir. 2006), the Ninth Circuit "declin[ed] to extend the relaxation of Heck's requirements" when the "failure timely to achieve habeas relief is self-imposed." The Seventh Circuit also recently reached the same conclusion, holding: "In agreement with those circuits that already have had to address the situation, we hold that Heck applies where a § 1983 plaintiff could have sought collateral relief at an earlier time but declined the opportunity and waited until collateral relief became unavailable before suing." Burd v. Sessler, — F.3d. —, 2012 WL 6554694, at *5 (7th Cir. 2012) (citing Powers v. Hamilton Cnty. Pub. Defender Comm'n, 501 F.3d 592, 601 (6th Cir. 2007) ("[A] § 1983 plaintiff is . . . not entitled to such an exception if the plaintiff could have sought and obtained habeas review while still in prison but failed to do so.")). Plainly, the principal rule is that Heck's favorable termination requirement is excused only where the plaintiff has diligently pursued his habeas remedies, or was practicably unable to do so prior to his release.

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                    1:11CV192

<u>MEMORANDUM OPINION AND ORDER</u>

In light of that principle, Lewis and Tiborsky are not exempt from <u>Heck</u>'s favorable termination requirement because their inability to obtain habeas relief is self-imposed, <u>Guerrero</u>, 442 F.3d at 705, and not the consequence of any unforeseen turn of the law. First, it is undisputed that, in order to avoid further incarceration, both pleaded guilty to misdemeanor battery and waived their appellate rights. Before they entered their guilty pleas, the circuit court explained that their appellate waivers extinguished all contested legal issues in the case. (Dkt. No. 45-2 at 174; <u>see also</u> Dkt. No. 45-2 at 171). Second, it is undisputed that, prior to entering their guilty pleas, both Lewis and Tiborsky were aware of the Fourth and Fifth Amendment violations in dispute here, and, indeed, had challenged them by multiple pretrial motions. See <u>Domotor v. Wennet</u>, 630 F.Supp.2d 1368, 1380 (S.D. Fl. 2009) <u>aff'd</u>, 356 F. App'x 316 (11th Cir. 2009) (<u>Heck</u> favorable termination requirement applied where the plaintiff, although no longer in custody, "entered into a plea agreement with knowledge of all or substantially all of the allegations that now form the basis of a § 1983 action for damages."). Furthermore, the trial court offered them the opportunity to cure the alleged Sixth Amendment violations via a mistrial, an offer they declined in favor of entering guilty pleas to the lesser included offense of misdemeanor

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.            1:11CV192

MEMORANDUM OPINION AND ORDER

battery. Finally, it is undisputed that neither has ever challenged the validity of his guilty plea on appeal or by petition for habeas relief.

Lewis and Tiborsky's current dilemma, therefore, stems not from any unfair turn of the law, but solely from a calculated decision to cut their losses by pleading guilty to the lesser included offense of misdemeanor battery. Under those circumstances, to allow them shelter in Wilson's narrow exception would enable them to "end-run Heck," Bishop, 484 F. App'x at 754, and, at bottom, would confer on them the benefit of their plea bargain while shielding them from its consequences. Thus, Wilson does not provide Lewis and Tiborsky a safe haven from Heck's favorable termination requirement.[6] Their § 1983 claims, therefore, fail as a matter of law.

### B. Counts VI and VII – Negligent and Intentional Spoliation of Evidence

No federal cause of action exists for a defendants' spoliation of evidence. In Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001), the Fourth Circuit held that while "spoliation

---

[6]    In Count II, the plaintiffs allege the defendants conspired to violate the plaintiffs' civil rights. The plaintiffs' conspiracy allegation cannot stand without the underlying offense, violation of 42 U.S.C. § 1983.

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.            1:11CV192

MEMORANDUM OPINION AND ORDER

of evidence may give rise to court imposed sanctions deriving from this inherent power, the acts of spoliation do not themselves give rise in civil cases to substantive claims or defenses." The Court therefore **GRANTS** the defendants' motion as to Counts VI and VII, insofar as they purport to allege a federal cause of action.

### C. Remaining State Law Claims

Finally, based on its dismissal of the federal claims in this case, the Court declines to exercise its discretionary supplemental jurisdiction over Lewis and Tiborsky's remaining state law claims. "[A] district court has inherent power to dismiss [a] case . . . . provided the conditions set forth in [28 U.S.C.] § 1367(c) for declining to exercise supplemental jurisdiction have been met." Hinson v. Northwest Fin. South Carolina, Inc., 239 F.3d 611, 617 (4th Cir. 2001). Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims or claims over which it has original jurisdiction."

The Fourth Circuit suggests four factors to guide a district court's discretionary decision to dismiss supplemental state claims: 1) convenience and fairness to the parties; 2) the existence of any underlying issues of federal policy; 3) comity; and 4) considerations of judicial economy. Semple v. City of

23

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                1:11CV192

MEMORANDUM OPINION AND ORDER

Moundsville, 195 F.3d 708, 714 (4th Cir. 1999). Here, the Court has rendered judgment in favor of the defendants as to all the plaintiffs' federal claims (Counts I, II, VI, and VII, insofar as Counts VI and VII purport to state claims under federal law). At this point in the litigation, therefore, the parties are not ill-served by a dismissal without prejudice of the remaining state claims which may still be pursued in state court. See 28 U.S.C. § 1367(d). Moreover, as the plaintiffs seek to expand West Virginia's spoliation cause of action beyond its current boundaries, see Hannah v. Heeter, 584 S.E.2d 560 (W. Va. 2003), a state court is the more appropriate forum to resolve that question of state law.

For the reasons discussed, therefore, the Court **DISMISSES WITHOUT PREJUDICE** Count III (Malicious Prosecution), Count IV (Malicious Prosecution), Count V (Conspiracy with Regard to Malicious Prosecution), Count VIII (Slander), Count IX (Reckless Misconduct and, Alternatively, Negligence), Count X (Conspiracy), Count XI (Reckless Misconduct and, Alternatively, Negligence), Count XII (Intentional and/or Reckless Infliction of Emotional Distress), Count XIII (Negligent Retention), and Counts VI and VII (Intentional and Negligent Spoliation of Evidence, insofar as those counts allege a state cause of action for spoliation of evidence).

24

LEWIS, ET AL. v. CITY OF CLARKSBURG, ET AL.                    1:11CV192

**MEMORANDUM OPINION AND ORDER**

**V.**

In conclusion, the Court:

1)    **CONVERTS** the defendants' motion to dismiss (dkt. no. 24) to a motion for summary judgment;

2)    **GRANTS** the defendants' motion for summary judgment as to Counts I, II, and VI and VII (insofar as Counts VI and VII allege a federal cause of action for spoliation of evidence); and

3)    **DISMISSES WITHOUT PREJUDICE** the plaintiffs' remaining state law claims.

Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of Court to enter a separate judgment order and to transmit copies of both orders to counsel of record

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

It is so **ORDERED.**

DATED: February 11, 2013


                                    /s/ Irene M. Keeley

                                    IRENE M. KEELEY

                                    UNITED STATES DISTRICT JUDGE